UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED NATIONAL INSURANCE
COMPANY,

        Plaintiff,                   Case No: _____

v.

BLUE LAGOON CONDOMINIUM
ASSOCIATION, INC.,

        Defendant.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, United National Insurance Company ("United National"), through its undersigned counsel, hereby files this Complaint for Declaratory Judgment against Defendant, Blue Lagoon Condominium Association, Inc. ("Blue Lagoon"), and in support thereof states as follows:

## NATURE OF THE COMPLAINT

1. In this action, United National seeks declaratory relief concerning whether Blue Lagoon is entitled to coverage under a first-party property insurance policy in connection with a fire loss that occurred at the insured premises on or about November 20, 2018.

## THE PARTIES

2. Plaintiff, United National, is a Pennsylvania corporation with its principal place of business in Pennsylvania at 3 Bala Plaza East, Suite 300, Bala Cynwyd, PA 19004.

3. Defendant, Blue Lagoon, is a Florida corporation with its principal place of business at 5077 NW 7th Street, Suite 400, Miami, FL 33126.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists as between United National, on the one hand, and Blue Lagoon, on the other hand, and the amount in controversy exceeds $75,000.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Blue Lagoon resides in, and maintains its principal place of business in, this District; a substantial part of the events giving rise to the claim occurred in this District; the property that is the subject of this claim is located in this District; and the subject insurance policy at issue was delivered in this District.

## THE UNITED NATIONAL POLICY

6. United National issued a commercial property insurance policy, bearing policy number MP1019954, to Blue Lagoon for the November 27, 2017 to November 27, 2018 policy period (the "Policy").  A copy of the Policy is attached hereto as Exhibit "A."

7. The Policy provides commercial property insurance coverage for certain property located at 5077-5099 NW 7th Street, Miami, FL 33126 (the "Insured Premises"), subject to its various terms, conditions, definitions, exclusions, limitations and other provisions.

8. In relevant part, the Policy's Commercial Property Policy Common Policy Declarations form (DPB-101 (11/2009)) indicates that coverage is provided "As Per Attached Schedule SPB-100."

9. The Policy's Commercial Property Policy Schedule of Coverage Provided (SPB-100 (8/2004)) states as follows:

**COMMERCIAL PROPERTY POLICY**
**SCHEDULE OF COVERAGE PROVIDED**

| Policy No.: | MP1019954 | | Effective Date: | November 27, 2017 | | |
|---|---|---|---|---|---|---|
| Prem. Bldg. No. | No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance or Mo. Indemnity | Replacement Cost |
| 001 | 001 | Building | $28,510,409 | Special | No Coins | X |
| 001 | 001 | Business Personal Property | $70,000 | Special | No Coins | X |
| 001 | 002 | Guard House | $4,188 | Special | No Coins | X |
| 001 | 003 | Open Pavillion | $2,263 | Special | No Coins | X |
| 001 | 004 | Building | $60,529,911 | Special | No Coins | X |
| 001 | 004 | Business Personal Property | $60,000 | Special | No Coins | X |
| 001 | 005 | Pool, Spa, Gazebo, and Deck | $193,661 | Special | No Coins | X |

10. Further, the Policy's Condominium Association Coverage Form (CP 00 17 06 95) contains the following, relevant provisions:

> **E. LOSS CONDITIONS**
>
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> \*     \*     \*
>
> **3. Duties In The Event Of Loss or Damage**
>
> > **a)** You must see that the following are done in the event of loss or damage to Covered Property:
> >
> > \*     \*     \*
> >
> > **(2)** Give us prompt notice of the loss or damage. Including a description of the property involved.
> >
> > **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.
> >
> > **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the

3

      damaged property aside and in the best possible order for examination.

  **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

  **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

      Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies of your books and records.

  **(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the clam. You must do this within 60 days after our request. We will supply you with the necessary forms.

  **(8)** Cooperate with us in the investigation or settlement of the claim.

*   *   *

**4.  Loss Payment**

  **a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

    **(1)** Pay the value of lost or damaged property;

    **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

    **(3)** Take all or any part of the property at an agreed or appraised value; or

    **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

  **b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

*   *   *

4

    **g.** We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

        **(1)** We have reached an agreement with you on the amount of loss; or

        **(2)** An appraisal award has been made.

        \*     \*     \*

**8.**    **Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

    **a.** At actual cash value as of the time of loss or damage, except as provided in **b**., **c**. and **d**. below.

        \*     \*     \*

**G.**    **OPTIONAL COVERAGES**

If shown in the Declarations, the following Optional Coverages apply separately to each item.

        \*     \*     \*

    **3.**    **Replacement Cost**

        **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

        \*     \*     \*

        **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

        **d.** We will not pay on a replacement cost basis for any loss or damage:

5

    **(1)** Until the lost or damaged property is actually repaired or replaced; and

    **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

*   *   *

<b><u>THE CLAIM AND UNITED NATIONAL'S INVESTIGATION</u></b>

11. On or about November 20, 2018, the Insured Premises allegedly sustained physical damage as a result of a fire and subsequent water release from a fire sprinkler (the "Loss").

12. Blue Lagoon submitted a Replacement Cost Value claim to United National for the Loss, which was assigned Claim Number 18004904 (the "Fire Claim").

13. As part of its investigation of the Fire Claim, United National retained Sedgwick Claims Management Services, Inc. ("Sedgwick"), an independent adjusting firm, to assist with inspecting the loss and damage.

14. On November 23, 2018, Sedgwick attempted to inspect the Insured Premises. However, Sedgwick's investigation was limited by Blue Lagoon because Sedgwick was not granted access to the entirety of the Insured Premises that allegedly sustained loss or damage in connection with the Fire Claim.

15. On November 28, 2018, Sedgwick returned to the Insured Premises in an effort to complete its investigation. Again, however, Blue Lagoon denied Sedgwick access to the entirety of the Insured Premises that allegedly sustained loss or damage in connection with the Fire Claim.

16. Blue Lagoon made no effort to cooperate with Sedgwick to allow for a complete inspection of the Insured Premises in connection with the Fire Claim.

17. Following its two, limited inspections of the Insured Premises, Sedgwick prepared an estimate of the observable loss and damage relating to the Fire Claim.

18. On January 4, 2019, United National presented Sedgwick's estimate to Blue Lagoon for its consideration. To the extent that Blue Lagoon disagreed with Sedgwick's estimate, United National requested that Blue Lagoon provide any estimates or other information in its possession to substantiate its assessment of the scope and value of the Fire Claim.

19. Blue Lagoon did not timely respond to United National's request.

20. On April 4, 2019, Sedgwick, on behalf of United National, provided Blue Lagoon with a Sworn Statement in Proof of Loss ("Proof of Loss") and requested that Blue Lagoon complete and return the Proof of Loss to United National within 60 days, as required under the terms of the Policy.

21. Thirty days later, neither Blue Lagoon nor any of its representatives responded to Sedgwick or United National regarding the Proof of Loss. As such, on May 3, 2019, Sedgwick sent a duplicate copy of the request for the completed Proof of Loss to Blue Lagoon, along with another copy of the Proof of Loss, to ensure that Blue Lagoon received it.

22. Blue Lagoon failed and/or refused to submit the executed Proof of Loss to United National within the 60 day time period required under the Policy. Blue Lagoon also did not ever request an extension of the 60 day deadline.

23. On or about October 14, 2019, United National received a letter from Patrick Alayon, Esq. of Alayon & Associates advising of his firm's retention by, and representation of, Blue Lagoon in connection with the Fire Claim. As part of the same letter, Mr. Alayon stated that Blue Lagoon disagreed with United National's assessment of the claim. Mr. Alayon further confirmed that Blue Lagoon was making a Replacement Cost claim under the Policy for the Loss. Mr. Alayon offered no explanation for Blue Lagoon's failure to timely respond to United National's prior request for a Proof of Loss.

24.     Attached to the October 14, 2019 letter was a Proof of Loss dated October 11, 2019 setting forth a Replacement Cost Value claim being submitted by Blue Lagoon in the amount of $944,891.28.  A copy of the October 11, 2019 Proof of Loss is attached hereto as Exhibit "B."

25.     On November 11, 2019, counsel for United National sent a letter to Mr. Alayon confirming receipt of the Proof of Loss, but explaining that United National was unable to accept or reject the Proof of Loss at that time because of a lack of information.  Specifically, counsel for United National explained that United National required an opportunity to fully inspect and evaluate the scope of all damages being claimed by Blue Lagoon.

26.     As part of the November 11, 2019 letter, United National requested 10 separate categories of documentation and information relating to the scope and value of Blue Lagoon's Fire Claim.  United National also noted that the Dropbox link contained within Mr. Alayon's October 14, 2019 letter did not work and requested that those documents be reproduced.

27.     The November 11, 2019 letter was completely ignored by Blue Lagoon and Mr. Alayon.  As such, on December 16, 2019, counsel for Blue Lagoon sent a second letter reiterating the requests contained within the November 11, 2019 correspondence.  As part of the same December 16, 2019 letter, counsel for United National requested dates when United National could re-inspect the damage at the Insured Premises.

28.     Yet again, Blue Lagoon and Mr. Alayon ignored United National's requests.

29.     On or about February 13, 2020, counsel for United National sent additional correspondence to Mr. Alayon noting his and Blue Lagoon's failure to respond to the two prior letters and again reiterating the requests for information, documentation and a reinspection.

30.     Once again, Blue Lagoon and Mr. Alayon categorically failed or refused to respond to United National's requests.

31. More than two years after Mr. Alayon's letter of October 14, 2019, Blue Lagoon finally responded to United National. Specifically, on March 8, 2022, Luke Ford, Esq., co-counsel with Patrick Alayon, Esq., sent a letter to United National's counsel providing a link to documents that were allegedly responsive to United National's request from December 16, 2019 and demanding payment of $944,891.28 within 30 days. No explanation was provided by Mr. Ford for Blue Lagoon's undisputed failure or refusal to comply with United National's prior requests or the Policy's post-loss duties.

32. The documents provided by Blue Lagoon with Mr. Ford's March 8, 2022 were duplicative of the documents previously produced and non-responsive to United National's long outstanding requests. Among the documents previously requested and not produced by Blue Lagoon were copies of all contracts, invoices, bank statements, canceled checks, credit card receipts, and any other documentation confirming any repair work completed at the Insured Premises relating to the Fire Claim and the amounts spent.

33. Subsequent requests for the outstanding categories of documentation and information were sent to Mr. Ford by letters dated April 27, 2022, May 27, 2022, and August 2, 2022. Notwithstanding these repeated requests, Blue Lagoon and its counsel continually failed or refused to provide the requested documents and information.

34. Also, on July 18, 2022, Mr. Ford sent a letter on behalf of Blue Lagoon to United National's counsel, finally agreeing to allow United National the reinspection that it requested nearly 3 years earlier on December 16, 2019. But, Blue Lagoon's consent was severely limited and shrouded by a significant condition. Specifically, Blue Lagoon was only permitting United National the opportunity to complete its reinspection within the two-week period immediately following the July 18, 2022 letter. In other words, Blue Lagoon was not willing to give United

National reasonable time or opportunity to re-engage consultants and/or experts with sufficient availability to reinspect the Insured Premises.

35. Blue Lagoon's actions described above materially and substantively prejudiced United National's ability to fully and fairly investigate the Fire Claim.

### COUNT I – DECLARATORY JUDGMENT
### (REPLACEMENT COST COVERAGE)

36. United National re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 35 above as if fully set forth at length herein.

37. The plain language of the Policy's Replacement Cost Optional Coverage provision leaves no mistake that there is no coverage available for Replacement Cost until the lost or damaged property is actually repaired or replaced **_and_** unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

38. Blue Lagoon is seeking Replacement Cost coverage under the Policy for the Fire Claim. Specifically, Blue Lagoon submitted a Proof of Loss dated October 11, 2019 setting forth a Replacement Cost claim in the amount of $944,891.28. *See* Exhibit "B." Blue Lagoon also submitted a Replacement Cost estimate prepared by Al Brizuela Engineering, dated August 19, 2019, totaling $905,304.09.

39. The fire loss occurred at the Insured Premises on November 20, 2018.

40. To date, the loss and/or damage relating to the Loss has not been actually repaired or replaced.

41. Since more than 4 years has passed from the date of the Loss, and Blue Lagoon has not actually repaired or replaced the damaged property at the Insured Premises, Blue Lagoon is not entitled to Replacement Cost coverage under the Policy.

42. The facts set forth above demonstrate the existence of an actual, justiciable controversy regarding whether Blue Lagoon is entitled to Replacement Cost coverage under the Policy in connection with the Fire Claim.

43. This controversy involves specific, adverse claims regarding the interpretation and effect of the Policy and the rights and obligations of the parties under the Policy, which claims are ripe for adjudication.

44. All facts necessary for an adjudication of this dispute have occurred.

45. All conditions precedent to the filing of this Complaint for Declaratory Judgment have been satisfied or waived.

**WHEREFORE**, United National respectfully requests a judgment by this Court declaring that Blue Lagoon is not entitled to Replacement Cost coverage under the Policy in connection with the Fire Claim, and awarding such other and further relief as this Court may deem just and proper.

### COUNT II – DECLARATORY JUDGMENT
### (ACTUAL CASH VALUE COVERAGE)

46. United National re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 35 above as if fully set forth at length herein.

47. In the event of a covered peril under the Policy, the Policy's Loss Payment condition states that United National may, among other things, pay the value of lost or damaged property or pay the cost of repairing or replacing the lost or damaged property.

48. The Policy's Valuation condition states that United National will determine the value of Covered Property in the event of loss or damage at Actual Cash Value as of the time of loss or damage. However, the Policy's Valuation condition is modified by the Replacement Cost condition, which states, in part, that Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation condition.

49. The Replacement Cost condition further states that Blue Lagoon may make a claim for loss or damage on an Actual Cash Value basis instead of on a Replacement Cost basis. In the event that Blue Lagoon chooses to make a claim on an Actual Cash Value basis, however, Blue Lagoon must communicate that election to United National.

50. In connection with the Fire Claim, Blue Lagoon submitted a Replacement Cost claim to United National.

51. Blue Lagoon's decision to pursue a Replacement Cost claim of the Fire Claim is confirmed, under oath, via its October 11, 2019 Proof of Loss and also via submission of the Al Brizuela Engineering estimate, which sets forth only a Replacement Cost estimate and does not account for any potential depreciation.

52. At no point did Blue Lagoon, or any of its representatives, ever inform United National that it was pursuing an Actual Cash Value claim in connection with the Fire Claim instead of a Replacement Cost claim.

53. Since Blue Lagoon never elected to make a claim for Actual Cash Value, instead of Replacement Cost, it is precluded from seeking Actual Cash Value benefits under the Policy in connection with the Fire Claim.

54. The facts set forth above demonstrate the existence of an actual, justiciable controversy regarding whether Blue Lagoon is entitled to Actual Cash Value coverage under the Policy in connection with the Fire Claim.

55. This controversy involves specific, adverse claims regarding the interpretation and effect of the Policy and the rights and obligations of the parties under the Policy, which claims are ripe for adjudication.

56. All facts necessary for an adjudication of this dispute have occurred.

57. All conditions precedent to the filing of this Complaint for Declaratory Judgment have been satisfied or waived.

**WHEREFORE**, United National respectfully requests a judgment by this Court declaring that Blue Lagoon is not entitled to Actual Cash Value coverage under the Policy in connection with the Fire Claim, and awarding such other and further relief as this Court may deem just and proper.

### COUNT III – DECLARATORY JUDGMENT
### (BREACH OF POST-LOSS DUTIES UNDER THE POLICY)

58. United National re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 35 above as if fully set forth at length herein.

59. The Policy's Duties In The Event of Loss or Damage loss condition contains eight, separate duties that must be followed by Blue Lagoon in the event of loss or damage at the Insured Premises.

60. Blue Lagoon's full compliance with the Policy's Duties In The Event of Loss or Damage loss condition is mandatory in the event of a loss or damage to the Insured Premises.

61. Failure to comply with the post-loss duties is a breach of the Policy and precludes coverage for resulting loss or damage.

62. Blue Lagoon willfully and categorically failed or refused to comply with the Policy's Duties In The Event of Loss or Damage loss condition in connection with the Fire Claim.

63. Blue Lagoon did not take all reasonable steps to protect Covered Property at the Insured Premises from further damage.

64. Blue Lagoon did not give United National complete inventories of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed, in response to United National's request.

65. Blue Lagoon did not permit United National to inspect the property proving the loss or damage or examine its books and records.

66. Blue Lagoon did not return a Proof of Loss within 60 days of the request being made by United National.

67. Blue Lagoon did not cooperate with United National in the investigation or settlement of the Fire Claim.

68. United National was materially and substantially prejudiced in its ability to fully and fairly investigate the Fire Claim as a result of Blue Lagoon's failure to comply with its post-loss duties under the Policy.

69. Blue Lagoon is not entitled to coverage under the Policy for the Fire Claim due to its non-compliance with the Policy's Duties In The Event of Loss or Damage loss condition.

70. The facts set forth above demonstrate the existence of an actual, justiciable controversy regarding whether Blue Lagoon is entitled to coverage under the Policy in connection with the Fire Claim.

71. This controversy involves specific, adverse claims regarding the interpretation and effect of the Policy and the rights and obligations of the parties under the Policy, which claims are ripe for adjudication.

72. All facts necessary for an adjudication of this dispute have occurred.

73. All conditions precedent to the filing of this Complaint for Declaratory Judgment have been satisfied or waived.

**WHEREFORE**, United National respectfully requests a judgment by this Court declaring that Blue Lagoon is not entitled to coverage under the Policy in connection with the Fire Claim

due to its failure and/or refusal to comply with the Policy's Duties In The Event of Loss or Damage loss condition, and awarding such other and further relief as this Court may deem just and proper.

Dated: April 10, 2023

                                              Respectfully submitted,

                                              ZELLE LLP

                                  By:  s/ Jason M. Chodos
                                              Jason M. Chodos, Esq. (FL Bar No. 025823)
                                              jchodos@zellelaw.com
                                              Jacarri M. Walker, Esq. (FL Bar No. 1010474)
                                              jwalker@zellelaw.com
                                              110 E. Broward Blvd., Suite 2000
                                              Ft. Lauderdale, Florida 33301
                                              Tel.: (786) 693-2351
                                              Fax: (612) 336-9100
                                              *Attorneys for Plaintiff,*
                                              *United National Insurance Company*